**ALLSTATE INSURANCE COMPANY,**
**Plaintiff,**

v.

**The ESTATE OF Ralph G. JOHNSON,**
**Deceased, Helen L. Pile,**
**Executrix, Defendant.**

**Civ. No. 82–5001.**

United States District Court,
W. D. Arkansas,
Fayetteville Division.

May 14, 1982.

Joseph Wm. Segers, Jr., Jones & Segers, Fayetteville, Ark., for plaintiff.

Mark Lindsay, Wommack, Lindsay & Associates, Fayetteville, Ark., for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a declaratory judgment action filed by Allstate Insurance Company against the estate of Ralph G. Johnson seeking, among other things, a declaration by this Court that it did not, by reason of an insurance policy which it issued to Mr. Johnson, have coverage of an accident described in the complaint and declaring that it had no duty to defend the estate in a lawsuit filed in relation to such accident nor any duty to pay any judgment rendered against it by reason of such accident. It is alleged that, since Allstate Insurance Company is an insurance corporation, with its principal place of business outside the State of Arkansas, and because Mr. Johnson was prior to his death a citizen of Arkansas and his executrix is now a citizen of the State, this Court has jurisdiction by reason of diversity of citizenship and sufficient jurisdictional amount. 28 U.S.C. § 1332. The action is brought under the provisions of 28 U.S.C. § 2201, a statute which grants to

federal district courts jurisdiction in certain declaratory judgment actions.

It is alleged in the petition filed that on March 21, 1980, Allstate Insurance Company issued a policy of insurance to R. G. Johnson covering a 1974 Cadillac automobile and a 1962 Oldsmobile automobile. It is alleged that on February 16, 1981, R. G. Johnson requested that the 1962 Oldsmobile be deleted from his policy and at that time representatives of the company inquired of Mr. Johnson whether there would be a replacement vehicle to be covered by the policy and were advised that there would not. It is claimed that on February 20, 1981, Mr. Johnson, while driving a 1972 Ford Galaxy owned by Razorback Petroleum Corporation, had an automobile accident and that as a result of such accident claims have been filed against the estate of Ralph G. Johnson, now deceased, by Bill E. Yousey, Tri-State Motor Transit Company, and Shelter Insurance Companies. It is not clear from the petition filed whether such claims actually resulted in a lawsuit, but it is assumed that such is the case since a request is made that the Court enter an order "staying all action in those pending cases." It is also alleged that the insurance company did not receive proper notice of the accident.

For some reason, the insurance company, when it filed its petition, failed to attach a copy of the insurance policy sued on to its complaint, but in response to the petition for declaratory judgment subsequently filed by the executrix, a copy of the policy was attached as an exhibit. In the response, the defendant admitted the issuance of the policy; admitted that it was issued to cover a 1974 Cadillac and a 1962 Oldsmobile and, in the words of the response, admitted:

> [T]hat on February 9, 1981, the Razorback Petroleum Corporation purchased a 1972 Ford Galaxy; that Ralph G. Johnson was involved in an accident while driving this vehicle on February 20, 1981; that the 1972 Ford Galaxy which was involved in the accident of February 20, 1981, was purchased in the name of Razorback Petroleum Corporation, a duly authorized

corporation existing by and virtue of the laws of the State of Arkansas; that no application has ever been made for the Razorback Petroleum Corporation to purchase insurance from the plaintiff, and no insurance policy has ever been issued to the Razorback Petroleum Corporation by the plaintiff insurance company.

With the exception of the admissions delineated above, the response essentially denied the remaining material allegations of the petition and requested that the Court declare that the insurance company had a duty to defend the estate of R. G. Johnson against any claims made by reason of the accident in question and to pay any amount due by reason of such accident.

After a letter from the Court to the attorneys for the parties asking if there were any facts in dispute or if the facts could be stipulated to so that the Court could apply the law to the admitted facts, the parties entered into a Stipulation of Fact signed by the attorneys for both parties. The Court will set forth the Stipulation of Fact in its findings of facts below. Although the record does not as clearly indicate as it should that the parties have agreed that the Court may decide the case based on the Stipulation of Fact and the briefs of counsel, it is clear that that is the intention of the parties. In any event, the insurance company filed a motion for summary judgment with its brief and the attorney for the defendant has responded indicating that he recognizes that the matter is to be decided by the Court on the facts stipulated. The attorneys for both parties attached to their briefs letters upon which they relied in support of their position, even though such letters were not made a part of the Stipulation of Fact or otherwise properly brought before the Court. Although the Court does not believe that these letters are technically evidence in the case, it is clear that the attorneys for both of the parties intended that they be considered and the Court will do so, considering that both parties have waived any objection to the technical irregularities which the Court believes exist in relation to these letters.

From the record which has been developed in the case, the Court makes its findings of fact and conclusions of law, separately stated.

### FINDINGS OF FACT

The parties jointly stipulated to the following facts:

1. The Court has jurisdiction of the persons and subject matter to this litigation.

2. That Helen L. Pile is the Executrix of the Estate of Ralph G. Johnson and that Ralph G. Johnson died on March 31, 1981.

3. That on March 21, 1980, the Allstate Insurance Company issued a policy of insurance to Ralph G. Johnson to cover a 1974 Cadillac and a 1962 Oldsmobile.

4. That on February 16, 1981, Ralph G. Johnson requested the 1962 Oldsmobile be removed from the policy and a refund check on the unearned premium was deposited on March 3, 1981, by Helen L. Pile at the direction of Mr. Johnson.

5. That on February 20, 1981, Ralph G. Johnson was involved in an accident while operating a 1972 Ford Galaxy owned by the Razorback Petroleum Corporation. Further, no application by Ralph G. Johnson nor Razorback Petroleum was ever made to the Allstate for coverage on this vehicle and no policy was ever issued.

6. That the 1972 Ford was purchased by Razorback Petroleum on February 9, 1981, from one Paula Clay.

7. That no accident was ever reported by Razorback Petroleum or Ralph G. Johnson involving the February 20, 1981, occurrence. That the first notice of any accident reported to Allstate was on or about May 16, 1981.

8. That Ralph G. Johnson was the incorporator of Razorback Petroleum, the agent for Razorback Petroleum and the principal office of the corporation was the home of Ralph G. Johnson. The principal driver of the 1972 Ford was Ralph G. Johnson.

In addition to the stipulated facts, from the file in the case the Court makes the following additional findings of fact:

9. That the provisions of the insurance policy sued on which are relevant to the determination of this matter provide:

The following persons are insured under this Section

1. The named insured with respect to the owned or a non-owned automobile provided the use of such non-owned automobile is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission.

\*     \*     \*     \*     \*     \*

Automobiles Covered

(a) "automobile" means a land motor vehicle designed for use principally upon public roads;

(b) "owned automobile" means the vehicle described in the declarations, and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured; however, this definition shall not apply under any coverage unless a premium is charged for the application of such coverage with respect to such vehicle;

(c) "replacement automobile" means a private passenger or utility automobile of which the named insured acquires ownership during the policy period, provided it replaces the owned automobile; if no expiration date is stated in the declarations, policy period means the period of time stated on the premium statement which is current at the time of the acquisition of the automobile;

(d) "additional automobile" means an additional private passenger or utility automobile of which the named insured acquires ownership during the policy period provided Allstate at the time of acquisition specifically insures all other private passenger and utility automobiles owned by the named insured, and further provided notice of its delivery be given to Allstate within 60 days after such acquisition and

any additional premium be paid by the named insured;

(e) "temporary substitute automobile" means any automobile, including a trailer, not owned by the named insured or a resident of his household while temporarily used with the permission of its owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

(f) "non-owned automobile" means an automobile, including a trailer, not owned by, or furnished or available for the regular use of, the named insured or any resident of his household other than a temporary substitute automobile, provided the use thereof is with the permission of the owner;

10. That the attorney for the estate has admitted, in behalf of the estate, in a letter dated July 8, 1981, that:

The evidence will further show that Mr. Johnson acquired the Ford automobile to replace a previously wrecked automobile which I understand was wrecked during the month of January, 1981. In short, it was a personal automobile replacing a wrecked personal automobile and was placed in the name of Razorback Petroleum for the sole purpose of limiting liability.

Mr. Johnson placed the Ford automobile under the ownership of Razorback Petroleum in the mistaken belief that he could limit his liability to corporate liability in any subsequent wreck.

11. That by letter dated August 18, 1981, a claims agent for Allstate Insurance Company advised the attorney for the estate that it denied that there was any coverage for the accident in question and that it declined to provide a defense for any claims made as a result thereof.

## DISCUSSION

As indicated by the facts stipulated to by the parties, the facts relevant to a determination of the issues raised in this matter are not in dispute. The Court finds that, when the provisions of the insurance policy are construed and the admitted facts applied to those provisions, it becomes clear that Allstate Insurance Company did not provide coverage for the accident in question and that it owes to the estate of Ralph G. Johnson no defense for any lawsuits or claims arising out of that accident and is not required to pay any judgment or amounts deemed to be due from the estate by reason of such accident.

■ The Court has set forth in its findings of fact above the provisions of the policy that it has determined are dispositive of the issues raised. The Court finds that those provisions are plain and unambiguous, and the law is well settled that the Court will not use a forced construction of the terms of an insurance contract where no ambiguity exists, and must apply the law to unambiguous terms of a policy. *Benton State Bank v. Hartford Acc. & Indem. Co.*, 452 F.2d 5 (8th Cir. 1971); *Peacock & Peacock, Inc. v. Stuyvesant Ins. Co.*, 332 F.2d 499 (8th Cir. 1964); *Hardware Dealers Mutual Fire Ins. Co. v. Holcomb*, 302 F.Supp. 286 (W.D.Ark.1969); *Southern Farm Bureau Cas. Ins. Co. v. Williams*, 260 Ark. 659, 543 S.W.2d 467 (1976); and *Arkansas Blue Cross—Blue Shield, Inc. v. Tompkins*, 256 Ark. 370, 507 S.W.2d 509 (1974).

■ The policy of insurance plainly and unambiguously provides that Allstate will pay all damages which the insured shall be legally obligated to pay, and shall provide a defense to the insured, for all claims arising out of the ownership and operation of an owned or non-owned automobile. Under the policy, the persons insured, among others, are the named insured with respect to an owned or non-owned automobile. Thus, it is important to determine who was the named insured and how the policy defines the terms "owned automobile" and "non-owned automobile." Clearly, the named insured was R. G. Johnson since he is the person to whom the policy of insurance in question was issued and he is, according to the policy, the named insured. The term

"owned automobile" is defined as the vehicle described in the declarations or "any replacement automobile," "any additional automobile," or "any temporary substitute automobile." It is, however, expressly provided that no coverage shall be provided for any of such automobiles unless a premium is charged for the application of such coverage with respect to such vehicles.

The 1972 Ford Galaxy which was being driven by Mr. Johnson at the time of the accident was clearly not the vehicle described in the declarations, so the first portion of the definition does not apply. The parties stipulated that the policy initially covered a 1974 Cadillac and a 1962 Oldsmobile, and that after the coverage on the Oldsmobile was terminated, no application was made by Mr. Johnson or anyone else requesting that Allstate provide coverage for the 1972 Ford Galaxy.

Likewise, the car driven by Johnson at the time of his accident was not a "replacement automobile" since that term is defined to cover an automobile which the named insured acquired to replace the owned automobile. The Stipulation of Fact clearly provides that the parties have agreed that Mr. Johnson did not acquire the 1972 Ford Galaxy, instead, the automobile was acquired by a corporation known as Razorback Petroleum Corporation, a separate legal entity. The law is so clear as to not require citation that a corporation, in Arkansas, absent circumstances which are not even arguably present in this case, is a separate legal entity and is viewed by the law as a separate person from its shareholders. It has been stipulated that the automobile was acquired and owned by Razorback Petroleum Corporation, a separate person, and the vehicle in question was clearly not acquired by the named insured to replace another automobile. In any event, before there is coverage on a replacement automobile, the policy provides that there must have been a premium charged with respect to such vehicle, and the parties have stipulated that such was not the case. Thus, it appears to be obvious that the vehicle which Mr. Johnson was operating at the time of the accident was not a replacement automobile, as that term is defined in the policy.

The same reasoning applies to any contention that there is coverage because the vehicle falls within the definition of "additional automobile." In order for a vehicle to fall within that definition, it must have been acquired by the named insured.

The vehicle driven by Mr. Johnson at the time of the accident was not a "temporary substitute automobile." The parties have stipulated that the 1972 Ford Galaxy was purchased by Razorback Petroleum Corporation and that Mr. Johnson was the principal driver of the vehicle. There is not even any allegation by the defendant that the 1972 Ford Galaxy was provided to him for temporary use, but, instead, was to permanently replace the 1962 Oldsmobile and that Mr. Johnson was the principal driver of it. Again, as pointed out above, even if, by some strained logic, it was determined that the vehicle was a "temporary substitute automobile," there would still be no coverage unless it was shown that a premium was charged for it, and there is not even any claim that this was the case. As pointed out in the findings of fact, the attorney for the estate has admitted that the vehicle was acquired by a separate corporation and was provided to Mr. Johnson to be his personal automobile to replace a personal automobile, apparently under the mistaken belief that he could limit his liability by doing so. Thus, clearly there is no coverage provided under the "temporary substitute automobile" definition.

From its brief filed in this matter it is obvious that the estate places primary reliance on the definition of "non-owned automobile" contained in subparagraph 2(f) of Section I of the policy. In order for a vehicle to fall within the terms of that definition, it must, among other things, be an automobile that was not furnished or available to the insured for his regular use. The parties have stipulated that the vehicle was provided to Mr. Johnson for his regular use. The Stipulation of Fact provides that: "The principal driver of the 1972 Ford was

Ralph G. Johnson." Thus, it was clearly provided to him for his regular use.

In support of his argument that the policy provisions relative to "non-owned automobile" are ambiguous, and should be construed strictly against the insurance company, the defendant cites *The Travelers Indemnity Co. v. Hyde*, 232 Ark. 1020, 342 S.W.2d 295 (1961). It is true that at first glance that case appears to lend support to the position of the defendant. However, a proper reading shows that that is not the case. In that case, the parties stipulated that at the time of the accident the insured was driving a motor vehicle furnished and owned by his employer. The vehicle was assigned to the insured for his exclusive use and was the only vehicle driven by him in the course of his employment. The policy provided for the payment of medical expenses caused by accident while the insured was occupying an automobile. The terms of the policy excluded any medical payments for bodily injuries sustained by the named insured while occupying an automobile furnished for the regular use of the named insured. The trial court found that the policy provisions were ambiguous and allowed the matter to go to the jury and the jury found in favor of the executrix of the insured. The Arkansas Supreme Court affirmed, holding that the jury could have construed the words "regular use of the insured" to mean for his personal use, and since it was stipulated that the vehicle was provided for the use of the insured in the course of his employment, that the exclusion did not apply. That contention is not a viable one in this case. The attorney for the estate of the insured admitted in his letter to the insurance company dated July 8, 1981, that: "In short, it was a personal automobile replacing a wrecked personal automobile and was placed in the name of Razorback Petroleum for the sole purpose of limiting liability." Thus, it is conceded that this vehicle was furnished to and used by Mr. Johnson as his personal automobile. Since that is the case, the Court sees no basis for holding that there is any question but that the vehicle in question was furnished to Mr. Johnson for his regular use, to use however he desired and was thus not a "non-owned automobile" as that term is defined in the policy.

In short, there is no question but that the vehicle which Mr. Johnson was driving at the time of his accident was not owned by him but was owned by a separate legal entity, Razorback Petroleum Corporation, and that it was not a replacement automobile, additional automobile, or temporary substitute automobile, as those terms are defined in the policy and was not an automobile for which a separate premium had been charged. For these reasons, it appears to be abundantly clear that the policy of insurance sued on does not provide coverage for the automobile accident in which Ralph G. Johnson was involved on February 20, 1981, and for this reason a judgment will be entered in favor of the Allstate Insurance Company on its petition for declaratory judgment.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the subject matter and of the parties.

2. That Policy Number 0–15–643904 issued by the Allstate Insurance Company to Ralph G. Johnson does not provide coverage for the automobile accident in which the said Ralph G. Johnson was involved while operating a 1972 Ford Galaxy automobile on February 20, 1981, and that said insurance company does not owe the estate of Ralph G. Johnson a defense to any claims or lawsuits arising out of such accident nor does it have a duty to pay any claims or damages resulting from said automobile accident.

3. That judgment should be entered in favor of the Allstate Insurance Company and against the estate of Ralph G. Johnson.

A separate judgment will be entered in accord with this memorandum opinion.