## SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY *v.* Forrest W. WILLIAMS

76-68                                       543 S.W. 2d 467

Opinion delivered November 15, 1976

*Hardin, Jesson & Dawson,* for appellant.

*Turner & Clift* and *Yates & Yates,* for appellee.

FRANK HOLT, Justice. This appeal arises from a judgment in favor of appellee in a suit involving the extent of the coverage of an automobile insurance policy issued by appellant to appellee. During the time appellee's insured vehicle was being repaired, it became necessary for him to borrow his daughter's and her husband's car. The daughter was staying with her parents during the time her husband was stationed overseas in the military service. When appellee drove the borrowed car, he struck a pedestrian. As a result a suit was filed by the pedestrian for damages against appellee. Appellee made demand upon appellant to defend the suit pursuant to the terms of his insurance policy. Appellant refused stating that the borrowed automobile was not an insured vehicle under the "TEMPORARY USE OF SUBSTITUTE AUTOMOBILE" clause, since the automobile was owned by and furnished for the regular use of appellee's daughter who was a member of the appellee's household. After appellee's successful defense of the personal injury suit against him, he brought this action to collect his attorney's fees, expenses and a penalty against appellant for its refusal to defend the suit. At trial the court denied appellant's motions for a directed verdict. For reversal of the judgment, based on a jury verdict in appellee's favor, appellant asserts that the evidence is insufficient to support the verdict.

In determining whether a verdict is supported by substantial evidence, we review the evidence in that light which is most favorable to the appellee and indulge all reasonable inferences favoring the support of the jury's findings. *Ark. State Highway Comm.* v. *Cook,* 257 Ark. 98, 514 S.W. 2d 215 (1974); and *Fields* v. *Sugar,* 251 Ark. 1062, 476 S.W. 2d 814 (1972). Here appellant argues that no substantial evidence exists from which the jury could have found that the automobile driven by appellee at the time of the accident was a temporary substitute automobile within the meaning of the policy. The relevant provision of the insurance contract provides:

VII TEMPORARY USE OF SUBSTITUTE AUTOMOBILE While a described automobile is withdrawn from use, such insurance as is afforded by this policy applies to another automobile not owned by

or furnished for the regular use of the named insured or spouse, or members of the same household, while temporarily used as a substitute for such automobile. This insuring agreement does not cover as an insured the owner of the substitute automobile or any employee of such owner.

It is undisputed that appellee's daughter and her husband were co-owners of the automobile. The issue then is narrowed to a determination of whether there was sufficient evidence to sustain the jury's implied finding that appellee's daughter was not a member of his household.

Appellee's daughter, Brenda, was eighteen years of age and living with her parents when she was married to her husband in June, 1968. The couple first lived with his grandmother approximately one month until he was inducted into the military service. Brenda returned "to my mother's and father's house." Before her husband left for overseas duty, he had a three weeks' furlough during which time they resided with his grandmother. Then in October or November, 1968, she again moved back with her parents and lived with them until July, 1969. At that time, her husband came home for about a one month's furlough during which time they visited relatives. After that furlough, he returned overseas. Brenda then "went again to live with [her] mother and father" where she was residing in September, 1969, when her father borrowed her and her husband's car which was involved in the accident. It appears that Brenda did not drive. During the approximate one year that Brenda lived with her parents, she would occasionally visit relatives. Her parents exercised no control over her. She contributed no money to her maintenance, although she occasionally did some cooking and cleaning. Her parents did not expect her to contribute anything. She had no outside employment and "re[lied] upon [her] father to feed and clothe" her. She received a government allotment check, which originally was $100 a month and eventually raised "to a hundred thirty sometimes or a hundred and forty," and from which she made the $81 car payment using the balance for her spending money. She testified that her and her husband's income "was not enough" to require the filing of a tax return. For the taxable year 1969, the appellee father claimed Brenda as a dependent

on his income tax return.

We turn now to the law applicable to the recited facts. In *American Homestead Ins. Co.* v. *Denny,* 238 Ark. 749, 384 S.W. 2d 492 (1964), we reiterated:

> 'It is the duty of the Courts to construe the language [in an insurance contract] used by the parties and such construction is performed by considering the sense and meaning of the terms which the parties have used as they are taken and understood in their plain ordinary and popular sense."

In the case at bar the policy provision is referred to by the courts as a restricted "drive other cars" clause which is found in liability insurance policies. It does not appear that we have previously construed this particular provision. Here, as indicated, we must determine if there is any substantial evidence that appellee's daughter was not a member of his "household." If she was a member, then the policy excludes coverage. We have had occasion to interpret the term "household" in a theft insurance policy which excluded coverage if it was found that the plaintiff's son, serving in the military, was not a "household" member. In affirming a finding that he was a member, we said in *Central Manufacturer's Mut. Ins. Co.* v. *Friedman,* 213 Ark. 9, 209 S.W. 2d 102 (1948), in pertinent part:

> We think the word 'household' as used in this section of the policy, *supra,* meant domicile, residence or place of abode. 'Household' is defined in Bouvier's Law Dictionary, Rawle's Third Revision, vol. 2., page 1462, as follows: 'Those who dwell under the same roof and constitute a family.'

In *Lontkowski* v. *Ignarski,* 95 N.W. 2d 230 (Wis. 1959), the court defined the word "household" as follows:

> 'Household' is defined by Webster as 'those who dwell under the same roof and constitute a family.' That definition corresponds with the common and approved usage of the term and is supported by judicial authority.

'Persons who dwell together as a family constitute a household.'

See also *Fleming* v. *Traveler's Ins.*, 39 So. 2d 885 (Miss. 1949); *Aler* v. *Travelers Indemnity Co.*, 92 F. Supp. 620 (D. Maryland 1950); *Leteff* v. *Maryland Casualty Co.*, 91 So. 2d 123 (La. App. 1956); *Simon* v. *Milwaukee Automobile Mut. Ins. Co.*, 115 N.W. 2d 40 (Wis. 1962); *Giese* v. *Karstedt*, 141 N.W. 2d 886 (Wis. 1966); *Tomlyanovich* v. *Tomlyanovich*, 58 N.W. 2d 855 (Minn. 1953); *Alabama Farm Bureau Mut. Ins. Co.* v. *Preston*, 253 So. 2d 4 (Ala. 1971). The appellee has cited us no authority to the contrary.

In *Alabama Farm Bureau Mut. Ins. Co.* v. *Preston, supra*, the insured's daughter lived with her parents during the time her husband was overseas in the armed service. Her father was involved in a collision while driving her and her husband's car. The court addressed itself to the question as to "whether Carol [the daughter] was a resident of Preston's [the father] household at the time of the collision within the exclusion provision of his policies with the insurer." In holding that she was a resident of the insured's household at the time of the collision within the meaning of the policy and denying coverage, the court said:

> Under the undisputed facts, Carol came to 'stay' with her parents while her husband was overseas. While she did not intend to stay permanently with her parents, nevertheless her stay was to extend for an indefinite time. She was not a mere temporary visitor. Actually, she did remain in her parents' home for over a year. It was during this time that Mr. Preston had the collision while driving the Dodge automobile. We hold that under the undisputed facts the conclusion is dictated that Carol was residing in her father's home at the time of the collision. The language of the policy here involved is not legally ambiguous. Such language excludes liability of the insurer under the facts shown.

The rationale expressed there is applicable in the case at bar.

The justification of the exclusionary clause here, which is characterized as the "drive other cars" provision, is well

stated in *Fleming* v. *Traveler's Ins., supra:*

> We are dealing with a contract of insurance. We must inquire what the parties thereto meant. Practical consideration must be given play, interpreted in the light of the purpose of the policy provision. This provision has repeatedly held to reveal an obvious purpose to avoid a multiple coverage of several vehicles owned by members of the same family, who, by their close intimacy may be expected to use the car of each other without hindrance and without permission, thus increasing the liability of the insurer who has a right to expect each owner to contract for his own coverage.

Appellee argues that the exclusion clause here is ambiguous and should, therefore, be construed most strongly against the insurer. *Life and Casualty Ins. Co. of Tennessee* v. *Gilkey,* 255 Ark. 1060, 505 S.W. 2d 200 (1974). We are of the view that the exclusionary provision of the policy is clear and legally unambiguous. It is unnecessary to resort to rules of construction in order to ascertain the meaning of an insurance policy when no ambiguity exists. *McKinnon, Admx.* v. *Southern Farm Bureau Casualty Ins. Co.,* 232 Ark. 282, 335 S.W. 2d 709 (1960). The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid.

In the case at bar, we hold that the evidence, when viewed most favorably to the appellee, is not substantially sufficient to support the jury's finding that appellee's daughter was not a member of his household at the time he borrowed and was driving her automobile.

Reversed and dismissed.